Ron L. FLUELLEN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–537 C.

United States Court of Federal Claims.

June 23, 1999.

Guy J. Ferrante, Falls Church, VA, for plaintiff.

Armando Bonilla, with whom were David W. Ogden, Acting Assistant Attorney General and David M. Cohen, Director, U.S. Department of Justice, Washington, DC, Lt. Col. Ralph A. Bauer, Chief, Military Personnel Branch, United States Air Force, Arlington, VA, of counsel, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

This is an action for the correction of military records and reinstatement to active military duty. Plaintiff, Ron L. Fluellen, filed suit against the United States in August 1994, alleging that he was involuntarily separated from active duty in the Air Force after two improper promotion nonselections.[1] Plaintiff specifically challenges the conduct of the Central Major Selection Boards that declined to select him for promotion to major. He asserts that the selection boards convened in panels which contravened statutory authority ("panel evaluation issue") and abrogated the legal protection afforded reserve officers ("reserve officer issue").

Plaintiff also asserts that the Air Force improperly conducted his promotion review under the Officer Evaluation System introduced in 1988.[2] In particular, plaintiff alleges that the most senior officer evaluating his

---

**1.** An Air Force major must retire after the officer "has failed of selection for promotion to the next higher regular grade for the second time and [his] name is not on a list of officers recommended for promotion to the next higher regular grade." 10 U.S.C. § 632(a) (1994).

**2.** The hallmark of the Officer Evaluation System ("OES"), which is set forth in Air Force Regulation 36–10, is the separate consideration of an

officer's performance from that officer's promotion potential. Plaintiff's Cross–Motion for Summary Judgment ("Pl.'s Cross–Motion") at 7. Under the OES, officers receive periodic Officer Performance Reports ("OPRs") which focus solely on performance. *Id.* As an officer nears promotion consideration, the officer's supervisor prepares a Promotion Recommendation Form ("PRF"). *Id.*

record met with the other officers evaluating his record to align their promotion recommendations in violation of agency regulations ("mini-board issue").

Defendant moved to dismiss or, alternatively, for summary judgment. Plaintiff filed a cross motion for summary judgment. In 1997, while briefing was underway, the court stayed the action pending the Federal Circuit's decision in another case involving the review of various aspects of the Air Force's promotion procedures. Upon issuance of the appellate court's opinion in that case, *Small v. United States*, 158 F.3d 576 (Fed.Cir.1998), the parties briefed the applicability of the Federal Circuit's decision to this case. The parties also briefed the effect of Department of Defense Directive 1320.9 on the review practices at issue, in particular, whether the use of panels contravened guidance requiring that separate boards consider each "competitive category" ("competitive category issue").[3] For the following reasons, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.[4]

I. Plaintiff's Complaint

Plaintiff is a former captain in the Air Force Reserves who served on extended active duty. In 1989 and again in 1991, the Air Force's Central Major Selection Board considered but did not select plaintiff for promotion to major.

In July 1991, plaintiff applied to the Air Force Board for Correction of Military Records ("AFBCMR"), contesting the propriety of his promotion nonselections in 1989 and 1991 and the validity of the 1989 Promotion Recommendation Form ("PRF").[5] Plaintiff specifically complained that "the Air Force's use of panels as part of the promotion pro-

cess along with its decision to include so few Reserve officers in that process violated clear statutory directives on the subject and that the new Officer Evaluation System usurps the statutory responsibility of promotion boards." Complaint ("Compl.") ¶ 22. The AFBCMR denied relief in February 1992. Four months later, plaintiff wrote the AFBCMR charging that it had failed to consider all of plaintiff's complaints. In January 1994, the AFBCMR denied relief again.

Plaintiff filed this complaint in the United States Court of Federal Claims in August 1994, alleging that the promotion nonselections in 1989 and in 1991 compelled his involuntary separation from active duty in the Air Force in February 1992. Plaintiff complains that the Air Force selection boards operated contrary to law because—rather than working as a collective body—the boards "are broken down into independent and autonomous ... panels." Compl. ¶ 10. Because the board functions in five member panels without distribution of officer records to members of all panels, plaintiff contends that a majority of the board members do not "recommend" candidates for promotion as required by 10 U.S.C. § 616(c) (1994). Compl. ¶¶ 10, 27. The plaintiff also contends that the panel system prevents the board members from complying with the statutory requirement that they certify:

(1) that the board has carefully considered the record of each officer whose name was furnished to it under section 615 of this title, and (2) that, in the opinion of a majority of the members of the board, the officers recommended for promotion by the board are best qualified for promotion to meet the needs of the armed force concerned (as noted in the guidelines or

---

3. Directive 1320.9 of the Department of Defense establishes "competitive categories" for the promotion of active duty officers. Department of Defense ("DoD") Directive 1320.9 ¶ A (1981). Air Force officers are divided into "line" officers and "non-line" officers. Defendant's Supplemental Brief ("Def.'s Supp.Br.") at 3. Non-line officers are grouped into their specialized career fields: Judge Advocate, Medical Corps, Dental Corps, Chaplains, Medical Services Corps, Biomedical Sciences Corps, and Nurse Corps. Pl.'s Cross Motion, App. at 19. These specialized career fields function as the competitive catego-

ries for promotion purposes. *Id.* Officers in the same competitive category must compete among themselves for promotion. 10 U.S.C. § 621 (1994).

4. Defendant withdrew its motion to dismiss during oral argument. Transcript ("Tr.") at 0.

5. Although plaintiff received a "Promote" recommendation in 1989, he was not selected for promotion. Administrative Record ("AR") at 292.

information furnished the board under section 615(b) of this title) among those officers whose names were furnished to the selection board.

10 U.S.C. § 617(a) (1994).

Plaintiff further complains that the random allotment of officer records to panels for ranking and scoring contravenes statutory authority because reserve officers do not necessarily sit on those panels considering reservists for promotion. Compl. ¶ 26. He alleges that the 40 member selection board that considered his promotability in 1989 had only one reserve officer. Compl. ¶¶ 6, 11. The 40 member selection board that considered his promotability in 1991 had just two reserve officers, one of whom considered only the promotability of medical corps officers. Compl. ¶ 12.

In May 1997, this court stayed plaintiff's case pending the decision of the Federal Circuit in *Small v. United States*, 158 F.3d 576 (Fed.Cir.1998) [6] *See* Order filed May 22, 1997 (suspending the proceedings to "narrow and clarify the issues presented in this case"). After the appellate court issued its decision, this court lifted the stay of proceedings and ordered the parties to brief the legal effect of the *Small* decision here. The court also ordered the parties to address the promotion board policies articulated in Department of Defense ("DoD") Directive 1320.9, a subject on which briefing was underway at the court's request when proceedings were stayed in 1997. *See* Order filed March 31, 1999.

## II. Discussion

### A. Standard of Review of AFBCMR Decision

We decide this case on the parties' cross-motions for summary judgment on the administrative record of the AFBCMR's decision. Motions for judgment upon the admin-

istrative record are treated in accordance with the rules governing motions for summary judgment. Rule of Court of Federal Claims ("RCFC") 56.1; *see Nickerson v. United States*, 35 Fed.Cl. 581, 588 (1996), *aff'd*, 113 F.3d 1255, 1997 WL 177509 (Fed. Cir.1997). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Jay v. Secretary of DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)); *Jay*, 998 F.2d at 982.

Here, the court reviews the AFBCMR's decision denying plaintiff's requested relief. *See Cohn v. United States*, 15 Cl.Ct. 778, 789 (1988) (the court reviews a military pay case "through the prism of a correction board"). The Federal Circuit has observed that "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). Indeed, "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." [7] *Nolan v. United States*, No. 98–124C, 1999 WL 346124 (Fed. Cl. May 28, 1999), *quoting Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804 (1979). Thus, "[t]he merits of a service sec-

---

**6.** Prior to the stay, the parties briefed the panel evaluation issue, the reserve officer issue, and the mini-board issue in cross-motions for summary judgment.

**7.** "[C]ourts are ill equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." *Chappell v. Wallace*, 462 U.S. 296, 305, 103 S.Ct.

2362, 2368, 76 L.Ed.2d 586 (1983). *See Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973) ("The complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments....").

retary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995).

■ However, a court may review a decision of the AFBCMR to determine " 'whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes or regulations'." *Kirwin v. United States,* 23 Cl.Ct. 497, 502 (1991) (quoting *Craft v. United States,* 210 Ct.Cl. 170, 179, 544 F.2d 468 (1976)). The court cannot reweigh the evidence but must decide "whether *the conclusion being reviewed is supported by substantial evidence*" (emphasis in original). *Id.* (quoting *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983)).

■ The plaintiff bears the burden of showing that the AFBCMR's action was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986); *Hoskins v. United States,* 40 Fed.Cl. 259, 271–72 (1998). To prevail under the arbitrary and capricious standard, plaintiff must demonstrate that evidence was ignored or unreasonably construed, or that designated duties were not performed by the AFBCMR. *Kirwin,* 23 Cl.Ct. at 502. Moreover, "plaintiff must overcome the presumption that 'administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.' " *Chayra v. United States,* 23 Cl.Ct. 172, 178 (1991), *quoting Sanders,* 219 Ct.Cl. at 302, 594 F.2d 804. "While the court might disagree with the board's decision, it cannot substitute its own judgment for the board's if reasonable minds could reach differing resolutions of a disputed fact." *Chayra,* 23 Cl.Ct. at 178–179.

■ To overturn a decision of the AFBCMR, the "plaintiff must show by cogent and clearly convincing evidence ... (1) a material legal error or injustice in the

correction board proceeding and (2) an adequate nexus between the error or injustice and [plaintiff's] separation from service." *Chayra,* 23 Cl.Ct. at 178. Summary judgment for the government is appropriate even if procedural errors have occurred when plaintiff can state no authority for granting the requested relief. *Law v. United States,* 26 Cl.Ct. 382, 393 (1992); *see also Doggett v. United States,* 207 Ct.Cl. 478 (1975) (court reiterated its repeated refusal "to interject [itself] into the discretionary military promotion process even if legal error was in some respect committed as to the complaining servicemen").

B. The *Small* Decision

■ The decision of the Federal Circuit in *Small v. United States,* 158 F.3d 576 (Fed. Cir.1998), *amended-in-part on reh'g, suggestion for reh'g en banc declined* (No. 97–5074) 1999 WL 274467 (Fed.Cir.Mar. 12, 1999) involved facts that are substantially similar to the facts of this case. Because the *Small* appeal specifically addressed the issue of whether the use of a panel system in the officer promotion process violated the statutory requirements of 10 U.S.C. §§ 616(c) and 617(a), we will address the legal effect of that decision following a summary description of the Air Force's Promotion Recommendation Process.[8]

1. The *Promotion Recommendation Process*

The Air Force's Promotion Recommendation Process has several tiers of officer review. The record of each officer considered for promotion is reviewed by: (1) the officer's senior rater, (2) a Management Level Evaluation Board ("MLEB"), and (3) the central selection board. First, a senior rater prepares on behalf of each officer a PRF. Then, the MLEB reviews the AF Form 709, which documents an officer's performance-based potential, and the PRF of each officer.

8. At oral argument, plaintiff conceded that the Air Force conducted plaintiff's promotion review in a manner similar to the promotion review described in *Small v. United States,* 158 F.3d 576 (Fed.Cir.1998). Tr. at 38. Accordingly, the ensuing description of the Air Force promotion

eligibility and board system follows the description in the Federal Circuit opinion in *Small* as well as the Promotion Recommendation Process described in Air Force Regulation 36–10, 1 August 1988. *See* Pl.'s Cross Motion, App. at 59–92.

Plaintiff's Cross–Motion for Summary Judgment ("Pl.'s Cross Motion"), App. at 64. An officer's PRF reflects one of three possible recommendations: Promote, Definitely Promote, or Do Not Promote. *Id.* at 67. A limited number of "Definitely Promotes" are allocated for various grades of the "competitive categories." [9] *Id.* at 8. A senior rater who has personal knowledge of a ratee's performance awards the promotion recommendations for officers within a particular grade and promotion zone. *Id.* at 64–65. Air Force Regulation 36–10 states that "while information and advice from subordinate raters are encouraged, senior raters will not convene boards or panels of officers to score records and generate a priority list of eligible officers." Air Force Regulation 36–10 ¶ 4–9a(3)(a) (1998) ("AFR 36–10").

If a senior rater has too few eligible officers for promotion under his supervision to acquire a "Definitely Promote" allocation, the MLEBs may award such recommendations to those officers whose senior raters had no "Definitely Promotes" to award. Pl.'s Cross–Motion at 8. The MLEBs convene 40 to 60 days before the central selection board to ensure that each officer receives full consideration in the promotion recommendation process. AFR 36–10 ¶ 4–3(i).

The Secretary of the Air Force appoints the members of the central selection boards to recommend for promotion officers within a competitive category.[10] U.S.C. §§ 611(a), 612(a) (1994). When a board convenes, the board members are formally briefed regarding eligibility criteria and scoring procedures, and then participate in a practice scoring exercise to establish a uniform standard for scoring. The selection boards are then divided into independent subordinate panels to score records and recommend officers for promotion. The Air Force makes a random assignment of records to the panels until all of the records are distributed. Each panel is also assigned a proportionate share of the entire board's promotion quota.

The individual panel members separately score each candidate's records. Once the panel members have reviewed and scored all the assigned records, the scores of the individual panel members are summed and a total score is awarded to each candidate. The candidates are prioritized in relative order of merit based on their total scores. The panel determines the list of candidates to recommend for promotion by starting with the highest merit score and moving down through the numerical rankings until the panel's share of the board's promotion quota is satisfied.

When the promotion cut-off point occurs at a numerical scoring level containing more candidates than can be accommodated within the panel's promotion quota, the candidates with the same score clustered at the cut-off point are said to fall within the "gray" zone. The panel must rescore the records of the gray zone candidates to identify the best officers for promotion. The panel then fills its share of the board's promotion quota by including the top rescored candidates.

Next, each board member must decide whether to endorse the entire slate of candidates selected by the individual panels. Each member must certify that the board has carefully considered the record of each candidate and has recommended for promotion only those officers who are, in the opinion of a majority of the board, "best qualified" of all the candidates considered. 10 U.S.C. § 617 (1994). That certification finalizes the list of recommended officers for promotion. The selection board then submits its written report containing its certification to the Secretary of the Air Force.

### 2. Panel Evaluation Issue

Contrary to plaintiff's view that the list of officers recommended for promotion should come from the collective determination of the entire selection board rather than individual panel deliberations, the Federal Circuit held in *Small* that the use of a panel evaluation

---

9. *See* footnote 3.

10. The Defense Officer Personnel Management Act ("DOPMA"), as set forth in Title 10, United States Code, Chapter 36, governs the promotion

of active-duty officers. The statute specifies that military officers are to be considered for promotion by "selection boards." 10 U.S.C. § 611(a).

system in the officer promotion process does not contravene the statutory requirements of 10 U.S.C. §§ 616(c) and 617(a).[11]

Although plaintiff contends that this case is factually distinguishable from *Small,* the arguments advanced in this case regarding the promotion board process are strikingly similar to the plaintiff's in *Small.* In his appeal to the Federal Circuit, Mr. Small argued that the recommendation of a single panel did not constitute the recommendation of a majority of the members of the board— with the result that board members could not certify such recommendations as reflecting the majority consensus. Defendant's Response to Plaintiff's Supplemental Brief ("Def.'s Resp."), Exh. 1 at 24–25. Mr. Small further argued that board members were not invited "to register their approval/disapproval of the panels' (nonexistent) findings and recommendations at the end of the process." *Id.* at 26. Mr. Small asserted that the court's characterization of "the board members' signatures in blank as the operative 'choice' of the majority under Section 616(c)" eviscerated Sections 616(c) and 617(a). *Id.* at 19.

In this case, plaintiff has argued the Air Force's promotion process violates sections 616 and 617 because neither the individual board members nor the panels make any findings or recommendations for "a majority of the members of the board" to approve or indorse. Plaintiff's Supplemental Brief ("Pl.'s Supp.Br.") at 2. Plaintiff adds that the board members do not use "common and identifiable criteria" in their scoring of records. *Id.* at 2. He contends that "[a]pplying *Small* to the dissimilar facts alleged in this case would mean that officials may ratify in blank an undisclosed and unknown result." *Id.* at 3 (footnote omitted).

The Federal Circuit squarely addressed each of plaintiff's arguments on the panel evaluation issue in *Small.* According the proper deference to the DoD in its administration of the statute governing military promotions as required by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984),[12] the Federal Circuit stated:

> Congress has not spoken to the issue of whether the selection board must conduct itself as a collective body. The statutory provisions do not contain any specific methodology that the selection board must use in carrying out its deliberative process.

---

**11.** Section 616(c) provides standards for promotion recommendations:

> A selection board convened under section 611(a) of this title may not recommend an officer for promotion unless—
>> (1) the officer receives the recommendation of a majority of the members of the board; and
>> (2) a majority of the members of the board finds that the officer is fully qualified for promotion.

10 U.S.C. § 616(c) (1994). Section 617(a) provides for the communication of promotion recommendations to the Secretary of a military department:

> Each selection board convened under section 611(a) of this title shall submit to the Secretary of the military department concerned a written report, signed by each member of the board, containing a list of the names of the officers it recommends for promotion and certifying (1) that the board has carefully considered the record of each officer whose name was furnished to it under section 615 of this title, and (2) that, in the opinion of a majority of the members of the board, the officers recommended for promotion by the board are best qualified for promotion to meet the needs of the armed force concerned (as noted in the guidelines or information furnished the board under section 615(b) of this title) among those officers whose names were furnished to the selection board.

10 U.S.C. § 617(a) (1994).

**12.** *Chevron* provides:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress had not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43, 104 S.Ct. at 2781–82.

*Small,* 158 F.3d at 581. Finding the Secretary of the Air Force's interpretation and implementation of the governing statutes permissible, the Federal Circuit explained:

> The statute does not require that a majority determination be based on a knowing review and conscientious consideration of each officer's record. Nothing in the plain language of the statute requires first-hand knowledge on the part of the deliberators of an officer's record. All that is required is a numerical showing that more than half of the board members approved or disapproved of the matter before them. The Air Force, like the other branches of the military, is confronted with establishing a selection process pursuant to statute that is fair in view of the extensive number of individual officers who may be eligible for consideration. A review of a selected number of individual by subpanels who use common and identifiable criteria is an efficacious and equitable means to establish the final rankings that are in fact approved by a majority of the members of the board. This court is not in a position under *Chevron* to impose its statutory construction for that of the Air Force when it finds that the statutory construction provided by the agency is a permissible one. In sum, we agree with the trial court that "[t]here is ... no reason why the business of coming to a 'majority' consensus cannot be accomplished through collective approval of the findings and recommendations of a subgroup—i.e., a selection panel." *Small,* 37 Fed.Cl. at 156. In addition, using the signing of the Board Report as a means for the members to both express their approval of the recommended candidates and make the required certification is permissible under the statutory scheme as well.

*Small,* 158 F.3d at 581.

Plaintiff's attempt to recast his objection to the panel evaluation system is unavailing. For the reasons articulated in *Small,* the Air Force's use of panels in the selection board process is a permissible implementation of the governing statute.

### 3. Competitive Category Issue

■ Plaintiff also asserts that the holding of *Small* does not govern in this case because the internal guidance of the Department of Defense compels the use of a single selection board to consider officer promotions within a single competitive category. Plaintiff complains that the selection procedure conducted during his promotion review involved a single selection board considering multiple competitive categories in contravention of DoD Directive 1320.9.

The Secretary of the Air Force must convene selection boards to recommend officer promotions in accordance with the regulations prescribed by the Secretary of Defense. 10 U.S.C. § 611(a) (1994). In 1981, the DoD established policies for the conduct of promotion boards throughout the agency in Directive 1320.9. The directive states:

> Separate selection boards shall be convened for each competitive category and grade as established under the provisions of section 621, reference (a).
>
> a. *Centralized Selection.* To ensure fairness in the promotion selection process and a balanced appraisal of the needs of the Military Service concerned, a single board shall be convened to consider all eligible officers in the same grade and competitive category for promotion.

DoD Directive 1320.9(D)(1)(a) (1981).

Here, the Air Force claims that "there is no evidence in the record to support [an] assertion ... that [plaintiff] was evaluated for promotion along with officers from other competitive categories." Defendant's Supplemental Brief ("Def.'s Supp.Br.") at 11. Rather, each panel of a selection board, operating separately and autonomously, considered a different competitive category of officers for promotion. *Id.*

The trial court in *Small* addressed this issue:

> A subordinate contention that plaintiff also raises here is that the selection boards were in violation of a governing Department of Defense Directive, DoD 1320.9 (1981), in that they simultaneously considered for promotion officers in different competitive categories rather than just officers, like Major Small, who made up the so-called "line of the Air Force."

*Small v. United States,* 37 Fed.Cl. 149, 153–154 (1997) (footnote omitted). The *Small* trial court concluded that in the absence of any evidence that officers from different competitive categories were evaluated by the same panel during Mr. Small's promotion review, the point merited no further attention.[13] *Id.* at 156.

Plaintiff refines the argument regarding competitive categories in this case. While declining to allege that he was subjected to an "inter-competitive category" evaluation, plaintiff instead claims that the Air Force promotion process permits a single selection board to consider officers in different competitive categories for promotion in violation of agency regulations. Plaintiff's Response to Defendant's Supplemental Brief ("Pl.'s Resp.") at 10.

Plaintiff's argument turns on the proper interpretation of the phrase "a single board" in DoD Directive 1320.9. Plaintiff claims the language is restrictive and requires the collective selection board to consider promotions for only one competitive category of officers. The government responds that, consistent with the statutory authority of § 621,[14] DoD Directive 1320.9 simply requires that officers within in a particular competitive category compete only among themselves, that is, against officers within the same competitive category, for promotion.[15] The Air Force noted that its interpretation is supported by a related provision in the DoD Directive authorizing selection boards to be convened concurrently:

> Selection boards convened for different competitive categories or grades may be convened concurrently when practicable at the discretion of the Secretary of the Military Department concerned.

DoD Directive 1320.9 ¶ D(1)(b).[16] The government's view tracks closely the reasoning of the Federal Circuit in *Small* with respect to the cognate issue of centralized review in the promotion process. *See Small,* 158 F.3d at 581. This court finds the government's interpretation of DoD Directive 1320.9 persuasive.

4. Reserve Officer Issue

The final issue in this case which can be resolved with reference to *Small* flows from plaintiff's status as a reserve officer. In addressing the applicability of *Small,* plaintiff argues that this case is "fundamentally distinguishable ... because [plaintiff] is a Reserve officer and therefore entitled to the protections afforded by 10 U.S.C. §§ 266 and 612(a)(3)." Pl.'s Supp.Br. at 3. Section 266(a) of Title 10 of the United States Code provides that:

> each board convened for the ... promotion ... of Reserves shall include at least one member of the Reserves, with the exact number of Reserves determined by the Secretary concerned in his discretion.

10 U.S.C. § 266(a) [renumbered § 12643(a) in 1994]. Section 612(a)(3) requires:

> When reserve officers of an armed force are to be considered by a selection board, the membership of the board shall include at least one reserve officer of that armed force, with the exact number of reserve officers to be determined by the Secretary of the military department concerned, in his discretion. ...

10 U.S.C. § 612(a)(3). Plaintiff contends that these statutory requirements are frustrated "when the [reviewing] Reserve member serves on only one panel and plays no role in the consideration of Reserve officers whose records are 'randomly' distributed to the other panels." Pl.'s Supp.Br. at 8.

---

**13.** The appellate court did not revisit the issue.

**14.** Title 10, United States Code, Section 621 states:

> Under regulations prescribed by the Secretary of Defense, the Secretary of each military department shall establish competitive categories for promotion. ... Officers in the same competitive category shall compete among themselves for promotion.

**15.** Contrary to defendant's argument in its supplemental brief, the *Small* trial court does not appear to have addressed this particular issue. *See Small,* 37 Fed.Cl. at 156; Def.'s Supp.Br. at 10.

**16.** The DoD Directive also permits consolidation of the promotion results for various competitive categories which have been separately considered for reporting purposes. DoD Directive 1320.9 ¶ D(1)(c)(1).

However, in amending the Defense Officer Personnel Management Act ("DOPMA"), Congress addressed this issue specifically:

> The committee also intends that the requirement for one [R]eserve member apply only to the selection board as a whole *and not to each panel* or other administrative subdivision.

Def.'s Resp. at 3, *quoting,* H.R.Rep. No. 97–141, 97th Cong., 1st Sess., at 12 (1981) (emphasis added), *reprinted in* 1981 U.S.C.C.A.N. (97 Stat.) 35. Certainly, the Air Force's interpretation and implementation of the governing statute and DoD Directive 1320.9 are consistent with the legislative intent.

Not only is plaintiff's argument inconsistent with legislative history, it also closely resembles the unsuccessful argument advanced in *Small* that the statute requires "knowing review" or otherwise personal participation by board members in a decision. *Small* 158 F.3d at 581. The court concludes that the personal participation of a reserve officer on a panel considering a reserve officer for promotion is not required by 10 U.S.C. §§ 266(a) and 612(a)(3).

### C. Mini–Board Issue

 Plaintiff also raises an issue particular to his case and not related to the issues treated in *Small.* Specifically, plaintiff alleges that the use of a mini-board in evaluating his promotability contravened AFR 36–10 ¶ 4–9a(3)(a), which prohibits senior raters from convening boards of officers to score records.[17]

Defendant's position is that plaintiff's senior rater, Col. William E. O'Brien, did not convene an improper mini-board. Defendant points to Col. O'Brien's testimony that he had his supervisors "review the records of all eligibles to provide supervisors the opportunity to see how their subordinates compared to other eligibles with respect to performance-based potential." Administrative Record ("AR") at 38. Col. O'Brien also stated that, prior to discussing the eligibles with his supervisors, he determined his rating for each person, and that those ratings did not change after his discussions with the supervisors. AR at 38–39, 44.

Whether or not a mini-board was convened, defendant denies that Col. O'Brien's discussions with his subordinates could have had any effect on the decision not to promote plaintiff. As evidence, defendant points to plaintiff's own letter of June 12, 1992 to the AFBCMR in which plaintiff acknowledged that his senior rater, Col. O'Brien, did not have an allocation of "Definitely Promote" ratings to award. AR at 100. Plaintiff stated that the MLEB made such awards. *Id.*

In support of his view, plaintiff offers the testimony of Lt. Col. Eddie R. Hall, plaintiff's supervisor.[18] Stating that he served on a "mini-board for the 1989 major's promotion board," Lt. Col. Hall explained that the "board reviewed and scored the records of eligibles which gave an indication of relative standing to the Senior Rater." AR at 266. Challenging the conduct of the mini-board in his 1991 application to the AFBCMR, plaintiff wrote, "Although the mini-board scores were not binding on my senior rater, my senior rater told me during my promotion recommendation conference (Oct 89) that the mini-board's results were a major factor in my promotion recommendation." AR at 257.

In addition to challenging the convocation of the mini-board, plaintiff complains that the 1989 mini-board's consideration of a voided Officer Evaluation Report ("OER") was improper.[19] Plaintiff contends that the "Pro-

---

**17.** Air Force Regulation 36–10 ¶ 4–9 states that while reviewing an officer's record of performance, the senior rater preparing the Promotion Recommendation Form ("PRF") on behalf of that officer may consult subordinate raters, who more closely supervise the officer, for further information on the officer's most recent performance and performance-based potential. AFR 36–10 ¶ 4–9(a). The regulation does not permit senior raters to convene boards of supervising officers for the purpose of scoring records and generating priority lists of officer promotions. *Id.*

**18.** Lt. Col. Hall prepared a letter on March 5, 1991 describing his participation on the 1989 major's promotion board, which plaintiff submitted with his 1991 application to the AFBCMR. AR at 267.

**19.** Plaintiff's OER of April 10, 1986 was voided for the technical error of comparing plaintiff to

mote" recommendation he received on his 1989 PRF was inaccurate because his senior rater erroneously considered a voided OER.

The technical advisory to the AFBCMR rejected this argument stating:

[I]t has not been proven this OER was the sole factor prompting the senior rater's Promote recommendation. On that basis, we contend there was no flaw in the CY89 PRF or the process under which it was rendered.... [W]e suspect other OERs within the record were also contributing factors to the Promote recommendation. Of nine OERs closing prior to 28 Jul 84, only one of the nine had been "firewall." [20]

AR at 177.

The court now reviews plaintiff's Master Personnel Record ("MPR") and the Administrative Record to determine whether substantial evidence supports the decision of the AFBCMR. *Kirwin*, 23 Cl.Ct. at 505. The court first examines the pre-July 1984 OERs that the technical advisory to the AFBCMR referenced.

While serving as an Exploitation Support Analyst at Offutt AFB from September 7, 1980 to March 6, 1980, plaintiff received seven "Well Above Standard" ratings and three "Above Standard" ratings on his OER. MPR at 62. On plaintiff's OER for March 7, 1980 to September 6, 1980, in the same position, he received seven "Well Above Standard" ratings and three "Above Standard" ratings. MPR at 64.

While serving as Chief, Exploitation Support Section at Offutt AFB from March 7, 1981 to September 6, 1981, plaintiff received four "Well Above Standard" ratings and six "Above Standard" ratings on his OER. MPR at 57. On that same OER, plaintiff's three raters, Major Fuller, Lt. Col. Myers and Col. Wicklund assigned a "2" rating for the "eval-

uation of potential." [21] MPR at 58. While serving in the same position, plaintiff received seven "Well Above Standard" and three "Above Standard" ratings on his OER for September 7, 1981 to March 6, 1982. MPR at 55.

On his next OER, covering the period March 7, 1982 to September 6, 1982, plaintiff received eight "Well Above Standard" and two "Above Standard" ratings while serving in the same position. MPR at 53. On his OER for September 7, 1982 to February 15, 1983, plaintiff received nine "Well Above Standard" and one "Above Standard" rating. MPR at 51.

While serving as Computer Software Analysis Officer at Lowry AFB from February 16, 1983 to February 15, 1984, plaintiff received seven "Well Above Standard" and three "Above Standard" ratings on his OER. MPR at 49. Again, on his OER for February 16, 1984 to July 27, 1984, plaintiff received seven "Well Above Standard" and three "Above Standard" ratings. MPR at 37.

In addition to his ratings, plaintiff's personnel file reflects positive comments regarding his performance as an officer. A positive view of plaintiff's performance record is conveyed in plaintiff's senior rater's comment in the promotion recommendation portion of the 1989 PRF. AR at 177. There, Col. O'Brien wrote, "Without question—promote to major this board!" *Id.* We note, however, that Col. O'Brien did not consider "the applicant's record of accomplishment and potential high enough to warrant a Definitely Promote." *Id.*

On review of the Administrative Record and plaintiff's Master Personnel Record, the court cannot find that the AFBCMR acted arbitrarily or capriciously, *Hoskins*, 40 Fed. Cl. at 271–72, or that the AFBCMR's deci-

---

other officers in the performance factor assessment. Defendant's Response to Plaintiff's Cross Motion at 1–2.

**20.** A "firewall" refers to an officer's receipt of the best possible rating in each evaluated performance area on an OER. Prior to the introduction of the OES in 1988 (*see* footnote 2, above), officers were evaluated on ten performance factors on a scale of five possible ratings: Far Below Standard, Below Standard, Meets Standard,

Above Standard, or Well Above Standard. Pl.'s Cross–Motion at 15. On his one "firewall" OER, plaintiff received "well above standard" ratings in each of the ten evaluated performance areas.

**21.** In evaluating potential, each rater is advised to "[c]ompare the ratee's capability to assume increased responsibility with that of other officers" in the same grade known to the rater. MPR at 56.

sion was unsupported by substantial evidence. *Kirwin,* 23 Cl.Ct. at 502. As the technical advisory to the AFBCMR noted in its February 1, 1993 advisory opinion, "[h]ad the applicant been a contender for a DP [definitely promote], and even without a senior rater recommendation, the MLEB would have brought this point up to the senior rater." AR at 177. Moreover, as the advisory to the AFBCMR further noted, the voided OER about which plaintiff strenuously complained was not a part of the record considered by the central selection board which prepared the final list of officers recommended for promotion. *Id.* at 177–78.

Also persuasive to the court is plaintiff's own acknowledgment that his record compromised his competitiveness for promotions. In appealing his nonselection for promotion to the AFBCMR, plaintiff conceded that on three occasions, specifically in August 1982, July 1985 and May 1987, he had been considered but not selected for a Regular Air Force appointment. AR at 279. He stated that his repeated nonselection for a Regular appointment made him "far less competitive for promotion, educational opportunities, and in-residence professional military education." AR at 261. Additionally, in a letter to the AFBCMR attached to plaintiff's application for military record correction, Lt. Col. Hall, plaintiff's former supervisor, explained that the "2" rating plaintiff received on his 1981 OER was "a major factor in his ranking and thus significantly contribute[d] to his promotion recommendation of promote versus definitely promote." AR at 267.

This court cannot interpose an independent judgment as to whether plaintiff merited a "Definitely Promote" recommendation in lieu of the "Promote" recommendation he received. *Chayra,* 23 Cl.Ct. at 178. Nor can this court conclude that the military officers evaluating plaintiff's record discharged their duties other than in good faith. *Id.* Further, while conflicting evidence exists regarding the conduct of a mini-board, the court determines that any legal error that may have occurred was not material or prejudicial because (1) the MLEB which independently reviewed plaintiff's record and the senior rater's comments also declined to award plain-

tiff a "Definitely Promote" rating, and (2) the voided OER was not reviewed by the central selection board that submitted the final list of officers recommended for promotion. Finally, plaintiff has presented no authority for granting the requested relief for the alleged procedural errors. *Law,* 26 Cl.Ct. at 393. Accordingly, summary judgment for the Air Force is appropriate on the mini-board issue.

III. Conclusion

For the foregoing reasons, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment. The Clerk of the United States Court of Federal Claims shall enter judgment for the United States. Each party shall bear its own costs.

IT IS SO ORDERED.